NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONNECTCIT GENERAL LIFE INSURANCE COMPANY, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | OPINION |
| v. | Civil Action No. 2:12-cv-05941 (DMC) (JBC) |
| ROSELAND AMBULATORY CENTER LLC, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

  This matter comes before the Court upon the Motion of Defendant Roseland Ambulatory Center LLC ("Defendant") to Dismiss the Complaint of Plaintiff Connecticut General Life Insurance Company ("Plaintiff") pursuant to FED. R. CIV. P. 12(b)(6). Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Defendant's Motion to Dismiss is **denied**.

I.  BACKGROUND[1]

  Plaintiff is a corporation formed under the laws of Connecticut with its principal place of business in Bloomfield, Connecticut. Defendant is a New Jersey limited liability company with its principal place of business in Roseland, New Jersey. Plaintiff administers and underwrites employee health benefit plans. One of the types of plans administered by Plaintiff is the Open

---

[1] The facts from this section are taken from the parties' pleadings.

1

Access Plus Medical Benefits Plan ("OAP Plan"). Plaintiff has attached summary plan descriptions ("SDPs") of its OAP Plans to its Complaint.

Plaintiff's OAP Plans allow participants to obtain services from out-of-network providers that do not have a contract with Plaintiff. When a participant obtains services from an out-of-network provider, he or she pays a larger share of the total cost in the form of a deductible, copayment, and/or coinsurance. Defendant is one of the out-of-network providers that administered services to participants enrolled in plans administered, and/or underwritten by Plaintiff.

Plaintiff claims that during the time period relevant to the Complaint, each OAP Plan contained an exclusion provision that disclaimed coverage for any charge 1) that the participant was not obligated to pay; 2) for which the participant was not billed for; and 3) for which the participant would not have been billed except that they were covered under the Plan. Further, Plaintiff claims that each OAP Plan stated that if Plaintiff makes an overpayment, Plaintiff will have the right to recover the overpayment from the person to whom it was made or offset the amount of that overpayment from a future claim payment.

Plaintiff alleges that between approximately March 11, 2008 and August 24, 2011, Defendant submitted over 990 claims to Plaintiff as an assignee of its patients' rights under OAP Plans administered by Plaintiff. Plaintiff claims that it has paid Defendant approximately $5,156,079.17 on those claims. Plaintiff alleges that during this time period, Defendant engaged in a practice known as "cost-share waiver." This practice allegedly involved Defendant accepting the amounts paid to it by Plaintiff and waiving, declining, or failing to collect in whole or in part the deductible, copayment, and/or coinsurance that participants of the OAP Plans were obligated to pay. Plaintiff claims that Defendant contacted representatives of Plaintiff prior to providing

2

services for these patients to inquire about eligibility and relevant coverage, and that Defendant was advised by the representatives that the patients were subject to a deductible or coinsurance obligation. Plaintiff also claims that Defendant failed to disclose its practice of waiving these fees on individual claim forms submitted to Plaintiff. Therefore, Plaintiff maintains that the funds paid to Defendant between approximately March 11, 2008 and August 24, 2011 were paid in error, and/or were induced by Defendant's cost-share waiver practice and deceptive and fraudulent billing practices.

On September 21, 2012, Plaintiff filed its initial Complaint against Defendant (ECF No. 1). Defendant filed its first Motion to Dismiss on November 16, 2012 (ECF No. 9). On December 7, 2012, Plaintiff filed an Amended Complaint, claiming that it is entitled to recover under i) the Employee Retirement Income Security Act ("ERISA") § 502(a)(3); ii) a theory of fraud; and iii) a theory of unjust enrichment ("Compl.," ECF No. 15). Defendant filed the instant Motion to Dismiss on February 11, 2013 ("Def.'s Mot.," ECF No. 25). Plaintiff filed a Brief in Opposition on April 1, 2013 ("Pl.'s Opp'n," ECF No. 31). Defendants filed a Reply Brief on April 8, 2013 (ECF No. 34), and a Revised Reply Brief on April 10, 2013 ("Def.'s Reply," ECF No. 37).

## II.  STANDARD OF REVIEW

In deciding a motion under FED. R. CIV. P. 12(b)(6), the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Id. On a

motion to dismiss, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Plaintiff's complaint is subject to the heightened pleading standard set forth in Ashcroft v. Iqbal:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009) (quoting Twombly, 550 U.S. at 557, 750).

### III. DISCUSSION

#### 1) Plaintiff's ERISA Claim

Count I of the Complaint alleges that Plaintiff is entitled to equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Defendant first argues that Plaintiff has not set forth facts supporting a legally viable claim under ERISA. Defendant claims that the SDPs submitted by Plaintiff are insufficient to allow Plaintiff to take action because they are not enforceable, citing CIGNA Corp v. Amara, 131 S. Ct. 1866 (2011) for this proposition. However, Defendant's reliance on Amara is misplaced. The Supreme Court in Amara did state that it "cannot agree that the terms of statutorily required plan summaries . . . necessarily may be enforced . . . as the terms of the plan itself." Id. at 1877. However, as the Tenth Circuit noted, "[i]In Amara, the Supreme Court specifically considered whether a district court could enforce terms in an SPD where those terms conflicted with the terms in governing plan documents." Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey, 663 F.3d 1124, 1131 (10th Cir. 2011). Therefore, the Tenth Circuit interpreted Amara as standing for two propositions: "(1) the terms of the SPD are not

enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents." Id. Other courts have taken a similar view. See Schussheim v. First Unum Life Ins. Co., No. 09 CV 4858, 2012 WL 3113311, at *3 (E.D.N.Y. July 31, 2012) (stating that Amara focused on "an apparent conflict between the *terms* of an ERISA plan, and a *summary* of those term"); Langlois v. Metro. Life Ins. Co., 833 F. Supp. 2d 1182, 1185 (N.D. Cal. 2011) (agreeing with the Tenth Circuit's interpretation of Amara); Bonanno v. Blue Cross & Blue Shield of Massachusetts, Inc., No. 10-11322, 2011 WL 4899902, at *7 n.4 (D. Mass. Oct. 14, 2011) (finding that the plaintiff's reliance on Amara was misplaced because there were no inconsistencies between the SDP and the plan itself).

Here, Plaintiff is not attempting to rely on the SDPs in order to establish inconsistent terms from the OAP Plans that are at issue in this case. Rather, Plaintiff is alleging that these SDPs accurately set forth the terms of the OAP Plans. Thus, because Plaintiff's factual allegations must be accepted as true, Defendant's argument that the case must be dismissed due to Amara is unavailing.

Defendant's second argument is that Plaintiff cannot bring its ERISA claim because the Supreme Court held in Sereboff v. Mid Atlantic Med. Servs., 547 U.S. 356 (2006), that a fiduciary is barred from enforcing a plan-reimbursement provision to recover damages because it is a legal action that § 502(a)(3) of ERISA does not authorize. Defendant has incorrectly read this case. In Sereboff, the Supreme Court stated that that ERISA § 502(a)(3) was meant to address "those categories that were *typically* available in equity." Id. (quoting Mertens v. Hewitt Associates, 508 U.S. 248, 256 (1993)). In that case, the petitioners were beneficiaries under a health insurance plan administered by the respondent. Id. at 359. The plan provided that if a

beneficiary was injured as a result of a third party, the beneficiary must reimburse the insurer if the beneficiary subsequently recovered money from the third party by means of a lawsuit or settlement. Id. The Supreme Court found that the insurer could sue for reimbursement under ERISA § 502(a)(3) because the claim was akin to an equitable lien established by agreement since the plan identified a particular fund, the plan identified a particular share of the fund that the insurer was entitled to, and the funds were in the petitioners' possession. Id. at 363-65; see also Funk v. CIGNA Group Ins., 648 F.3d 182, 194-95 (3d Cir. 2011) (finding that a reimbursement action under § 502(a)(3) was appropriate when the benefits plan specified the right to reimbursement).

Here, Plaintiff's claim is similar to those in Sereboff and Funk. Plaintiff has identified a provision in its plan that entitles it to recoupment for overpayments made and claims that Defendant is in possession of such funds, making Plaintiff's claim equitable in nature. Therefore, as Plaintiff's factual allegations must be accepted as true, Defendants' argument must fail.

Defendant's third argument is that Plaintiff's action violates ERISA's regulations regarding adverse benefit determinations because ERISA requires that claimants are given proper notification of the denial of benefits as well as a description of the plan's review procedures and a statement that the claimant has a right to bring a civil suit under ERISA. See 29 C.F.R. § 2560.503-1(g). Plaintiff argues that a recoupment action is not an adverse benefit determination. Although the law in this District is not entirely clear, the Eight Circuit has held that an adverse benefit determination only includes an insurer's initial denial of a benefit. Price v. Xerox Corp., 445 F.3d 1054, 1056 (8th Cir. 2006) ("The definition [of an adverse benefit determination is] unclear and, as the district court found, no case law interprets this specific provision. However, language elsewhere in the regulations indicates that only the initial denial of

benefits is an 'adverse benefit determination.'"). Further, this District found that dismissal was inappropriate when a plaintiff and defendant were arguing over whether an overpayment demand was an adverse benefit determination, stating that a "more complete factual picture" was needed to resolve the issue. Ass'n of New Jersey Chiropractors v. Aetna, Inc., No. 09-3761, 2011 WL 2489954, at *8-9 (D.N.J. June 20, 2011). Accordingly, the Court will not dismiss Plaintiff's claim on this ground.

Defendant's fourth argument is that Plaintiff is barred from bringing this claim because under the New Jersey Health Claims Authorization, Processing, and Payment Act ("HCAPPA"), N.J.S.A. 26:2J-8.1, Plaintiff only had eighteen months beyond the initial claim payment to seek repayment unless it 1) established clear evidence of fraud, and 2) affirmatively referred its investigation to the New Jersey Office of the Insurance Fraud Prosecutor. However, this section of the statute governs Health Maintenance Organizations, and, as argued by Plaintiff, the proper section is N.J.S.A. 17B:27-44.2, which applies to Health Insurers. Defendant does not dispute that N.J.S.A. 17B:27-44.2 is the proper section of the statute in its Reply Brief, and instead argues that Plaintiff nonetheless only had eighteen months to seek repayment under this section (See Def's Reply at 8). The language of the statute is as follows:

> *With the exception of claims that were submitted fraudulently or submitted by health care providers that have a pattern of inappropriate billing* or claims that were subject to coordination of benefits, no payer shall seek reimbursement for overpayment of a claim previously paid pursuant to this section later than 18 months after the date the first payment on the claim was made.

N.J.S.A § 17B:27-44.2(d)(10) (emphasis added). Plaintiff's action is clearly premised on the idea that Defendant submitted fraudulent claims and engaged in a pattern of inappropriate billing. Thus, Plaintiff's claim cannot be dismissed for a failure to abide by the time limit set forth in the HCAPPA.

2)  **Plaintiff's State Law Claims**

   **a. Preemption Argument**

   Counts II and III of the Complaint allege fraud and unjust enrichment. Defendant first argues that Plaintiff's state law claims must be dismissed because any state law claim that duplicates the ERISA civil enforcement remedy is preempted. ERISA expressly states that it shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" at issue. 29 U.S.C § 1144(a). Plaintiff argues that it has pled its state law claims in the alternative to its ERISA claim, and that such claims "will only be applicable to the extent that any of the OAP plans fall outside of ERISA's broad scope" (Pl.'s Opp'n at 26). Because Plaintiff is not attempting to recover on state law grounds based on plans covered by ERISA, it cannot be said that these claims are preempted by ERISA. See N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co., No. 10-4260 SDW, 2011 WL 4737067, at *8 (D.N.J. June 30, 2011) report and recommendation adopted, No. 10-CV-4260, 2011 WL 4737063 (D.N.J. Oct. 6, 2011) (stating that preemption would not exist in "cases . . . based . . . on a finding that the plan participant or beneficiary was not covered at all by an existing ERISA plan"); Matter of Schwartz, 185 B.R. 479, 487-88 (Bankr. D.N.J. 1995) (finding that preemption did not apply when an IRA account was at issue because IRA accounts are not covered by ERISA).

   **b.  Fraud Claim**

   With respect to Plaintiff's fraud claim, Defendant first argues that waiver of out-of-pocket costs does not constitute fraud, citing Garcia v. Health Net of New Jersey, Inc., No. A-2430-07T3, 2009 WL 3849685 (N.J. Super. Ct. App. Div. Nov. 17, 2009) for this proposition. In Garcia, the New Jersey Superior Court Appellate Division affirmed a trial court's decision to

grant summary judgment in favor of a surgical center and its physician-owners who had been sued by an insurer for fraud for waiving co-insurance obligations of patients whose benefits plans did not cover services performed at the center. Id. at *1, 4.

Garcia, an unpublished opinion, is distinguishable from the present case. First, the claim in Garcia was made under the New Jersey Insurance Fraud Prevention Act, whereas Plaintiff's claim here is one of common law fraud. Second, the court in Garcia based its decision on the fact that the insurer did not show that the surgical center and physicians submitted the claims "*knowing* that they were false and misleading." Id. at *3 (emphasis added). Here, Plaintiff contends that when Defendant submitted its claim, it "knew that its patients' payment of Cost-share Charges was a prerequisite to coverage under the Plans" (Compl. at 11).

Defendant additionally contends that Plaintiff has failed to plead its fraud claim with the particularity that is required under Federal Rule of Civil Procedure 9(b). Defendant claims that Plaintiff has failed to identify the plans at issue, again arguing that the SDPs are insufficient. Defendant also argues that the SDP language is ambiguous and does not clearly state that i) coverage is voided if the plan enrollee is not billed, and ii) Plaintiff has the authority to recover for overpayments made. Defendant maintains that the overpayment provision provided by Plaintiff only refers to subrogation claims against third-party tortfeasors or instances where the beneficiary has recovered damages for an injury.

Defendant's arguments fail. Plaintiff has sufficiently identified the plans at issue by providing the SDPs and as discussed supra, the fact that Plaintiff has included SDPs rather than the OAP Plans themselves is not a reason to dismiss the Complaint. Plaintiff alleges that the terms of the OAP Plans that are "relevant to general coverage and exclusions, as well as CGLIC's right to recover overpayment of benefits, have remained functionally identical from

March 11, 2008, to the present" (Compl. ¶8). Further, the language provided by Plaintiff is not ambiguous. Plaintiff's Complaint includes a provision from the SDPs that states that payment is excluded for "charges which [the beneficiary is] not obligated to pay or for which [the beneficiary is] not billed" (Id.). Additionally, Plaintiff's Complaint includes the relevant overpayment provision, which states that "[w]hen an overpayment has been made by [CGLIC], [CGLIC] will have the right at any time to: (a) recover that overpayment from the person to whom or on whose behalf it was made; or (b) offset the amount of that overpayment from a future claim payment" (Id.). This broad language cannot be read as limiting overpayment recovery to money that a participant receives as the result of a lawsuit.

Defendant's final argument regarding Plaintiff's fraud claim is that Plaintiff has not sufficiently pled the elements of fraud. The elements of fraud are as follows:

> (1) A specific false representation of material facts; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) the plaintiff acted upon it to his damage.

Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1983) (citation omitted). Plaintiff alleges that Defendant knew that its patients' plan required it to collect certain charges and that Defendant did not collect these charges (Compl. ¶ 33, 34, 36-37). Plaintiff also contends that the claims submitted to it by Defendant contained misrepresentations as to whether the claims were eligible for coverage, Defendant intended for Plaintiff to rely on these misrepresentations, and Plaintiff did in fact rely on them by paying the claims (Id. ¶ 53-56). Finally, Plaintiff has alleged damages as a result of the misrepresentations (Id. ¶ 57). These allegations are sufficient to state a claim for fraud. Accordingly, Defendant's Motion to Dismiss is denied.

    **c. Unjust Enrichment Claim**

10

Defendant argues that Plaintiff has not set forth sufficient facts to state a claim for unjust enrichment. Unjust enrichment requires a plaintiff to allege that "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for defendant to retain [the] benefit without paying for it." Snyder v. Farnam Companies, Inc., 792 F. Supp. 2d 712, 723-24 (D.N.J. 2011) (citation omitted). The premise of Plaintiff's Complaint is that Plaintiff mistakenly paid Defendant funds that it was not entitled to and that it would be unjust for Defendant to keep these funds. See Premier Pork L.L.C. v. Westin, Inc., No. 07-1661, 2008 WL 724352, at *14 (D.N.J. Mar. 17, 2008) (stating that unjust enrichment claims "involve either some direct relationship between the parties or a mistake on the part of the person conferring the benefit"). Therefore, Plaintiff has stated a claim for unjust enrichment and Defendant's Motion to Dismiss is denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **denied**. An appropriate order follows this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:       September 23, 2013
Original:   Clerk's Office
cc:         Hon. Joseph A. Dickson, U.S.M.J.
            All Counsel of Record
            File