**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CONNECTICUT GENERAL LIFE INSURANCE COMPANY,**<br><br>   Plaintiff,<br><br>   v.<br><br>**ROSELAND AMBULATORY SURGERY CENTER,**<br><br>   Defendant. | Civ. No. 2:12-05941 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      In the instant case, an insurance company and a hospital are suing one another over reimbursements for patient care. The insurance company, Plaintiff/Counterclaim-Defendant Connecticut General Life Insurance Company ("CGLIC") alleges in its Amended Complaint that Defendant/Counterclaim-Plaintiff Roseland Ambulatory Surgery Center ("Roseland") violated ERISA when Roseland failed to require CGLIC insureds to make certain out-of-pocket payments. The hospital, Roseland, alleges in its Counterclaim that CGLIC refused to pay Roseland after Roseland took care of its insureds.

      On September 24, 2013, Judge Cavanaugh denied Roseland's motion to dismiss CGLIC's Amended Complaint. As such, CGLIC's claims will provide to discovery. Now before the Court is a motion to dismiss Roseland's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain portions of Roseland's Counterclaim pursuant to Federal Rule of Civil Procedure 12(f). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, CGLIC's motion to dismiss is **GRANTED IN PART**, and **DENIED IN PART**. CGLIC's motion to strike is **GRANTED IN PART**, and **DENIED IN PART**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      Roseland makes the following allegations, which the Court accepts as true for purposes of the motion to dismiss. Roseland is an ambulatory surgical center in New Jersey. Counterclaim ¶ 8, ECF No. 44. CGLIC provides health insurance plans. *Id.* ¶ 10. Under these plans, CGLIC insureds can elect to receive care from out-of-network providers. *Id.* ¶ 11. Roseland is one such out-of-network provider. *Id.* When CGLIC

insureds received medical care at Roseland, Roseland would typically enter into a case contract with a company called VIANT, which Roseland alleges to be CGLIC's agent. *Id.* ¶¶ 14, 42. These case contracts stated that CGLIC, not VIANT, would be responsible for any payments due to Roseland. *Id.* ¶ 43. In addition, the case contracts stated that CGLIC waived its right to audit Roseland's charges. *Id.* ¶ 41. In return for waiving its rights to an audit, CGLIC (through VIANT) would negotiate a discount of up to 30%-40% from the "usual, customary, and reasonable rate which non-participating providers are entitled to under existing law." *Id.* Apparently, the agreement to receive a 30%-40% discount was an oral agreement negotiated between Roseland and someone at VIANT named "Patricia." *Id.* ¶ 46.

At a certain point, CGLIC began to audit Roseland's patient accounts—even though it had agreed not to perform such audits. *Id.* ¶ 15. CGLIC discovered that Roseland was not making CGLIC's insureds pay certain out-of-pocket costs, which the Court refers to as "co-insurance." CGLIC informed Roseland's failure to charge co-insurance violated both civil and criminal laws. *Id.* ¶ 18. According to CGLIC, Roseland was bound to charge co-insurance under CGLIC's plans. (This practice is known as cost sharing.) It was important to CGLIC that Roseland participate in cost sharing because Roseland was an out-of-network provider that received higher reimbursements than in-network providers. CGLIC maintains that by failing to charge co-insurance, Roseland was drawing in patients—and out-of-network reimbursements—that it would not otherwise have received. Apparently because of Roseland's failure to charge co-insurance, CGLIC stopped paying for care Roseland provided to CGLIC insureds. *Id.* ¶ 32.

To be clear, Roseland does not accept CGLIC's version of the facts. Roseland takes the position that it was never required to charge co-insurance to CGLIC's insureds. Nevertheless, because CGLIC "pressured" Roseland, Roseland began to charge co-insurance payments from CGLIC insureds. *Id.* ¶¶ 26-27, 31. And though CGLIC said that after it completed an audit it would start paying Roseland for services Roseland provided to CGLIC insureds, CGLIC did not follow through. *Id.* ¶¶ 35-36.

In June 2012, while CGLIC was still refusing to pay for what Roseland describes as "legitimate claims," *id.* ¶ 50, Roseland and CGLIC entered into settlement negotiations. *Id.* ¶ 52. In its Counterclaim, Roseland quotes an email from those settlement discussions. *Id.* The email describes a settlement demand and provides a specific dollar amount. Roseland takes the position that CGLIC was conducting settlement discussions in bad faith, with the goal of obtaining information about Roseland's collection and settlement practices. *Id.* ¶ 58.

While the settlement negotiations were proceeding, CGLIC filed the instant case seeking to recoup money it paid to Roseland. *Id.* ¶ 55. CGLIC's three-count Amended Complaint alleges ERISA violations, fraud, and unjust enrichment.

After CGLIC brought suit against Roseland, an article about the case was published under the headline "Cigna Subsidiary Suing N.J. Surgical Center for $6.6M." In that article (the "Article"), CGLIC spokesman Phil Mann was quoted as saying that "[t]he waiver of cost sharing as a routine business practice is deceptive and fraudulent." *Id.* ¶ 59.

Subsequently, Roseland moved to dismiss the Amended Complaint, arguing, among other things, that CGLIC had not stated a claim under ERISA, and that CGLIC's common law claims were preempted. Judge Cavanaugh, to whom the case was then assigned, held that CGLIC had stated a claim under ERISA. Judge Cavanaugh held that to the extent CGLIC was seeking to recover based on plans that were not governed by ERISA, CGLIC's state law claims were not preempted.

On September 25, 2013, Roseland filed a three-count Counterclaim. On December 20, 2013, CGLIC filed the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Counterclaim. Roseland opposed on January 7, 2014, and CGLIC filed a reply on January 21, 2014. On April 16, 2014, the case was reassigned to the undersigned.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975).

A Complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Additionally, under Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal quotations omitted). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

## III.    DISCUSSION

Roseland's Counterclaim contains three counts. Count I is a claim for breach of contract. Count II is a claim for breach of the implied covenant of good faith and fair dealing. Count III is a claim for common law fraud. CGLIC moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Counterclaim. CGLIC also moves to strike portions of the Counterclaim pursuant to Federal Rule of Civil Procedure 12(f).

### A. Motion to Dismiss

CGLIC makes two arguments in support of its motion to dismiss. First, it argues that Roseland's claims are preempted by ERISA. Second, it argues that Roseland's claims fail to satisfy Federal Rule of Civil Procedure 8(a) and 9(b).

#### 1. The Counterclaim Is Not Preempted By ERISA.

CGLIC contends that Roseland's claims are preempted under Section 502(a) and/or Section 514(a) of ERISA. Accepting as true the facts pled by Roseland, CGLIC's argument fails.

Section 502(a) of ERISA, codified at 29 U.S.C. § 1132(a), provides that "a participant or beneficiary" may bring suit to "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004).

Section 514(a) of ERISA, codified at 29 U.S.C. § 1144(a), provides that with certain exceptions not relevant here, the cause of action provided by ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan . . . ." A state law "relates to" an ERISA employee benefit plan when "it has a connection or reference to such a plan," *Metro Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985), *overruled in part on other grounds by Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329 (2003), or when "the existence of [an ERISA] plan is a critical factor establishing liability," *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1980).

Accepting as true the facts pled in the Counterclaim, the Court cannot find, for purposes of the motion to dismiss, that Roseland's claims are preempted under Section 502(a) or Section 514(a). The Court begins with Section 502(a). Roseland maintains that Section 502(a) does not apply because its claims for reimbursement "arise solely out of the VIANT contract by which it agreed to accept discounted payments and through which CGLIC paid Roseland [and] . . . do not depend or arise out of plans or assignments alleged by CGLIC . . . ." Opp. Br. at 18, ECF No. 53. Because Roseland is not seeking to "recover benefits due . . . under the terms of an ERISA plan," Roseland's state law claims are not preempted under Section 502(a).

Next, the Court turns to Section 514(a). Because Roseland is seeking to recover solely based on its contracts with VIANT, and not based on CGLIC's plans, Roseland's claims are not connected to an ERISA plan, Roseland's claims do not refer to an ERISA plan, and Roseland's claims do not require an ERISA plan as a critical factor in establishing liability. It follows that Roseland's claims are not preempted under Section 514(a). *See In re Managed Care Litig.*, Master File No. 00-1334-MD-MORENO, 2011 WL 1595153, at *5 (S.D. Fla. Mar. 31, 2011) (denying motion to dismiss state law claims on ERISA

preemption grounds where "allegations of underpayment require reference to provider agreements independent of the Defendant's employee plans.").

CGLIC disagrees with this outcome. It argues that Roseland's claims are preempted because "coverage [under an ERISA plan] is the beginning and end of this case and the interpretation and application of the Plans' out-of-network cost-share obligation will ultimately be the only real issue before the Court." Reply at 5, ECF No. 56. This argument very well might prevail on summary judgment, but it cannot prevail at the motion to dismiss stage because it does not reflect the allegations pled in the Counterclaim. Furthermore, though CGLIC represents that Roseland's state law claims for reimbursements are preempted under ERISA, CGLIC has pled its own state law claims for reimbursement. CGLIC argues that its state law claims should proceed in case ERISA does not govern. Similarly, Roseland's state law claims should proceed in case ERISA does not govern. (Notably, while CGLIC will be able to fall back on its ERISA claim to the extent preemption applies, Roseland chose not to plead any claims under ERISA.)

In sum, accepting as true the facts pled in the Counterclaim, the Court will **DENY** CGLIC's motion to dismiss to the extent the motion is based on ERISA preemption.

2.  Counts I-II Satisfy Rule 8(a).

Count I is a claim for breach of contract. To allege a breach of contract, a plaintiff must plead "(1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach." *AT&T Credit Corp. v. Zurich Data Corp.*, 37 F. Supp. 2d 367, 370 (D.N.J. 1999). Count II is a claim for breach of the implied covenant of good faith and fair dealing. "In New Jersey, the implied covenant of good faith and fair dealing is inherent in every contract, and requires that "neither party shall do anything which would have the effect of destroying or injuring the right of the other party to receive the full fruits of the contract . . . ." *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 277 (2001) (internal citations omitted). In addition, to prevail on a breach of the implied covenant of good faith and fair dealing claim, a plaintiff must establish bad faith. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 531 (D.N.J. 2008). CGLIC moves to dismiss Count I and II, arguing that Roseland's pleading fails to sufficiently identify the contract or contracts at issue in this case, and therefore fails to satisfy Rule 8(a). The Court finds CGLIC's argument unpersuasive.

Roseland's Counterclaim is far from a model of clarity. It alleges that Roseland would enter into case contracts for each patient with VIANT. It also alleges that Roseland had an oral agreement with VIANT governing the reimbursements that CGLIC would pay Roseland. The Counterclaim is not specific about the terms of this purported oral agreement, perhaps because it lacks access to "Patricia," a VIANT employee who supposedly entered into the agreement with Roseland. While the terms of any contract between Roseland and CGLIC, either written or oral, could certainly be better fleshed out in the Counterclaim, and while some of Roseland's factual allegations appear unlikely, the Court must view the Counterclaim in the light most favorable to Roseland for purposes of the motion to dismiss. Viewing the Counterclaim in the light most favorable to Roseland,

it appears (1) that there was some agreement between CGLIC and Roseland; (2) that Roseland provided care to CGLIC's insureds; and (3) that CGLIC refused to pay for that care. Roseland's allegations are sufficient to allow the case to proceed to discovery on the breach of contract claim. Whether they will withstand summary judgment is a different matter.

CGLIC thinks this is the wrong outcome for three reasons. First, CGLIC takes the position that Roseland only alleges a "re-pricing agreement" with VIANT, not a contract, and that Roseland's claims "are clearly simple claims for benefits under ERISA-governed employee health plans for services rendered to plan beneficiaries." Reply at 4. As noted earlier, Roseland's Counterclaim alleges otherwise. Second, CGLIC argues that it cannot be liable under Counts I and II because any operative contract Roseland entered into was entered into with VIANT, not CGLIC. While this argument would generally succeed, Roseland alleges that VIANT is CGLIC's agent. It is black letter law that a "principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume or which he holds the agent out to the public as possessing." *Alicea v. New Brunswick Theological Seminary*, 244 N.J. Super. 119, 128 (App. Div. 1990). The Court finds that, for purposes of the motion to dismiss, Roseland has sufficiently pled an agency relationship between VIANT and CGLIC.

Third, and finally, CGLIC argues that the breach of the implied covenant of good faith and fair dealing claim fails because Roseland has alleged bad faith. Roseland alleges that even though CGLIC said it would start paying Roseland after CGLIC finished its audit, CGLIC never followed through. This sufficiently alleges bad faith. The Court will **DENY** the motion to dismiss Counts I and II.

3. Count III Does Not Satisfy Rules 8(a) and 9(b).

Count III is a claim for common law fraud. CGLIC moves to dismiss Count III, arguing that it does not satisfy Rules 8(a) and 9(b). The Court agrees.

To state a claim for fraud, a plaintiff must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997).

It is difficult to parse the Counterclaim for fraud. Apparently, Roseland is arguing that CGLIC has made two kinds of misrepresentations. First, Roseland alleges that CGLIC fraudulently induced Roseland to enter into the contracts at issue here by making the knowingly false promise that it would not audit Roseland's bills. Second, Roseland alleges that after CGLIC conducted its audits and demanded to be reimbursed, CGLIC knowingly misrepresented the amount it should be reimbursed. *See* Counterclaim ¶ 75 (alleging that CGLIC has "materially misrepresented (and continue[s] to materially misrepresent) the

amount they [CGLIC] assert they are entitled to recoup based on inaccurate calculations of reimbursements."). While Roseland believes that CGLIC is misrepresenting the amount it is entitled to recoup from Roseland, Roseland fails to allege that CGLIC has actually recouped any money because of its alleged misrepresentations. Ultimately, the Count as alleged does not meet the standard of Rules 8(a) and 9(b) because Roseland has failed to allege damages. The Court will **DISMISS** Count III **WITHOUT PREJUDICE**.

### B.     Motion to Strike

CGLIC moves pursuant to Federal Rule of Civil Procedure 12(f) to strike those portions of the Counterclaim that address settlement discussions and the Article quoting CGLIC's spokesman. The Court finds that CGLIC's arguments are meritorious with respect to the allegations concerning the settlement negotiations but not the allegations concerning the Article.

Motions to strike "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Deery v. Crystal Instruments Corp.*, No. 13-198, 2013 WL 4517867, at *1 (D.N.J. Aug. 23, 2013) (internal quotations and citations omitted).

The Court begins with the allegations regarding settlement negotiations. Roseland's Counterclaim quotes from an email sent during the course of settlement negotiations. Roseland maintains that CGLIC's settlement negotiations were made in bad-faith, and that CGLIC's bad-faith tactics are relevant to Counts I-III. Generally, under Federal Rule of Evidence 408, settlement discussions are inadmissible "to prove or disprove the validity or amount of a disputed claim." However, settlement discussions "may" be admissible "for another purposes," such as to prove bias or prejudice. Fed. R. Evid. 408. The advisory note to Rule 408 provides that "Rule 408 is inapplicable if offered to show that a party made fraudulent statements in order to settle a litigation." Here, the Court finds that Roseland's Counterclaim does not plausibly allege that CGLIC made a fraudulent statement to settle litigation, and the Court similarly finds that the Counterclaim's references to the settlement negotiations fail to establish bias or prejudice. As such, Roseland's statements regarding the settlement negotiations will be **STRICKEN** from the Counterclaim.

Next, the Court considers the Counterclaim's reference to the Article. As noted earlier, the Article quotes a CGLIC as stating that failing to engage cost sharing is fraudulent. Because CGLIC is arguing in this case that Roseland committed fraud because it failed to engage in cost sharing, Roseland's reference to the Article is not prejudicial. The Court will **DENY** the motion to strike allegations relating to the Article.

7

## IV.     CONCLUSION

For the reasons stated above, CGLIC's motion to dismiss is **GRANTED IN PART**, and **DENIED IN PART**. Count III is **DISMISSED WITHOUT PREJUDICE**. Counts I and II survive. CGLIC's motion to strike is **GRANTED IN PART**, and **DENIED IN PART**. Allegations relating to settlement negotiations are **STRICKEN**. Allegations relating to the Article survive. The Court will grant Roseland 30 days in which to file an amended pleading addressing only those deficiencies identified in this opinion. An appropriate order follows.

                                         /s/ William J. Martini
                                   **WILLIAM J. MARTINI, U.S.D.J.**

**Date: June 11, 2014**